**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| NICKIE T. GRAY, ) | |
| ) | CASE NO. 4:09-CV-01468 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE PETER C. ECONOMUS |
| ) | |
| MICHAEL J. ASTRUE, ) | MAGISTRATE JUDGE GREG WHITE |
| Commissioner of Social Security ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff Nickie T. Gray ("Gray") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), partially denying Gray's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq.*[1] The Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.

For the reasons set forth below, the Magistrate Judge recommends that the final decision

---

[1] Gray was found to be entitled to a closed period of disability between May 15, 2004 and December 31, 2005.

of the Commissioner be AFFIRMED.

## I. Procedural History

On June 23, 2004, Gray filed an application for POD, DIB, and SSI alleging a disability onset date of May 15, 2004, and claiming that he was disabled due to residual effects of gunshot wounds to the chest and abdomen, a depressive disorder, and a cognitive disorder. His application was denied both initially and upon reconsideration. Gray timely requested an administrative hearing.

On May 14, 2007, an Administrative Law Judge ("ALJ") held a hearing during which Gray, represented by counsel, testified. Nancy J. Borgeson, Ph.D., testified as the vocational expert ("VE'). On May 25, 2007, the ALJ found Gray was entitled to a closed period of disability between May 15, 2004, and December 31, 2005, but had the ability to perform a significant number of jobs in the national economy after that period, and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

On appeal, Gray claims the ALJ erred by: (1) finding that Gray had undergone medical improvement allowing him to perform a substantial number of jobs as of January 1, 2006; and, (2) failing to adopt or consider hypotheticals posed to the VE by his counsel.

## II. Evidence

*Personal and Vocational Evidence*

Born on January 4, 1971, and age thirty-six (36) at the time of his administrative hearing, Gray is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) & 416.963(c). Gray has a tenth grade education and past relevant work as a rail car loader, painter,

and concrete laborer.

*Medical Evidence*

The Court's initial order requires all briefs to include a "Facts" section, which "shall cite, by exact and specific transcript page number, the pages relating these facts." (Doc. No. 5.) Herein, Gray's brief fails to include any discussion of the relevant medical history that serves as the foundation of his disability claim, nor has Gray challenged the Commissioner's portrayal of the facts. As such, the Court will presume the Commissioner's recitation of Gray's medical history is correct.

*Hearing Testimony*

At the hearing, Gray testified to the following:

- He was shot in May of 2004. One bullet hit him two inches away from his heart, while a second bullet grazed the right side of his head. (Tr. 390-91.)

- Since the shooting, he has trouble remembering things and his mind tends to wander off during conversations. (Tr. 391-92.)

- He spent two months in the hospital after the shooting and was in a coma for the first three days. He had open "drains and wounds." (Tr. 393-94.)

- Approximately a year later, he had to return to the hospital to have internal stitches removed and to repair a hernia. (Tr. 394.)

- He had been hospitalized in the past year after taking too much of a medication that he used to help him sleep and drinking alcohol with it. He denied he was attempting suicide. (Tr. 394; 397.)

- He had tried working at two different jobs since the shooting, but found the work too strenuous. (Tr. 401-02.)

- He used cocaine about once a month when someone gives him some. (Tr. 403.)

The ALJ posed the following hypothetical to the VE:

> Let me propose a hypothetical worker to you, and in doing this I'm going to assume without deciding.... So the hypothetical worker ... is 36 years old, has an 11th grade education, and training, and licensure as a truck driver, and also training in – I'm going to say hazardous material clean up. Exertionally this hypothetical worker is limited to a range of light work, and specifically, what I mean by that is the hypothetical worker can sit, stand, or walk for six hours each during an eight hour day, lift, carry, push, or pull 10 pounds frequently and 20 pounds occasionally. The hypothetical worker is further limited in that he can only occasionally stoop, kneel, crouch, or crawl. And, finally, the hypothetical worker is limited to simple, routine, low stress tasks where there is only limited and superficial interaction with supervisors, coworkers, and the public.

(Tr. 410.)

The VE responded that such a person could not perform any of Gray's past relevant work and none of the skills Gray had acquired were transferable given the hypothetical. (Tr. 411.) However, the VE testified that there were a significant number of jobs in the national or regional economy that the hypothetical worker could perform. *Id.* Three examples of such jobs were identified: visual inspector (3,700 locally - 300,000 nationally); assembler of small parts (10,000 locally - 752,000 nationally); and mail clerk (1,450 locally - 167,000 nationally). (Tr. 411-13.)

Gray's counsel posed three hypothetical questions to the VE that included additional limitations. (Tr. 413-15.) The first added the following: moderate impairments in the worker's ability to maintain persistence, concentration, and pace; moderate impairments in the worker's ability to deal with complex tasks; moderate impairments in the worker's ability to handle stress of any kind; moderate impairments in the worker's ability to deal with the general public, supervisors, and co-workers; and, moderate impairments in the worker's ability to adapt to changes in the work environment.[2] *Id.* The VE testified that such a worker would have trouble

---

[2] When asked to define "moderate," Gray's counsel opined that a moderate impairment would interfere with a worker's ability to perform related tasks one-third (1/3) of the time. (Tr. 414.)

4

sustaining full-time work. *Id*. The second hypothetical added the following limitations to the ALJ's hypothetical: extreme limitations in the worker's ability to push, pull, and handle; and, marked impairments in the worker's ability to bend and reach.[3] (Tr. 415.) The VE responded that such a worker would be unemployable. *Id*. Finally, the third scenario added the following limitations to the ALJ's hypothetical: the worker suffered from memory functioning and verbal intellectual deficits; had a significant deficit in awareness of the rules of social judgment and conformity; had a Global Assessment of Functioning ("GAF") score of 50;[4] and, required assistance in physical activities of daily living and supervision in handling financial affairs. *Id*. The VE testified that such a person would "probably be unable to sustain full-time employment." (Tr. 416.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a

---

[3] Gray's counsel defined an extreme limitation as one that would interfere with a worker's ability to perform related tasks two-thirds (2/3) of the time, while defining a marked limitation as one that would interfere with a worker's ability to perform related tasks more than fifty (50) percent of the time. (Tr. 415.)

[4] A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000). Gray's counsel asserted that a GAF score of 50 meant that such an individual required serious assistance in physical activities. (Tr. 416.)

continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[5]

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Gray was insured on his alleged disability onset date, May 15, 2004 and remained insured through the date of the ALJ's decision – May 25, 2007. (Tr. 14.) Therefore, in order to be entitled to POD and DIB, Gray must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits under the Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

---

[5] The entire five-step process entails the following: First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV. Summary of Commissioner's Decision

The ALJ found Gray established medically determinable, severe impairments, due to the residual effects of gunshot wounds to the chest and abdomen, a depressive disorder, and a substance addiction disorder. However, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. Gray was unable to perform his past work activities or any other work in significant numbers between May 15, 2004 and December 31, 2005, but had a Residual Functional Capacity ("RFC") for a limited range of light work thereafter. The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Gray was not disabled after December 31, 2005.

### V. Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

### VI. Analysis

Gray's Brief on the merits contains no real argument. Instead Gray's counsel poses a set

7

of brief questions followed by quotes from the administrative hearing and unexplained references to certain exhibits. Gray appears to take issue with the ALJ's finding that he had undergone medical improvement as of January 1, 2006, and the ALJ's failure to adopt or incorporate hypotheticals posed by his counsel to the VE in his final opinion. (Doc. No. 16.) Gray, however, fails to develop this argument in any meaningful manner. It is not the Court's function to comb through the entire record to develop an argument on Gray's behalf or to take the portions of the record cited by Gray's counsel and attempt to craft an argument that supports the general issues he referenced in the most perfunctory manner. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006). As such, Gray's claims may be deemed waived. However, setting aside the waiver issue, Gray's arguments also fail on the merits.

*Medical Improvement*

Gray asserts that the record as a whole does not show substantial physical improvement. (Doc. No. 16 at 5.) The Court construes Gray's "argument" as one asserting that there is not substantial evidence of record to uphold the ALJ's finding that Gray's disability ended on December 31, 2005, due to medical improvement of his various conditions.

The Court disagrees. The ALJ reasonably found that Gray's physical condition, as of January 1, 2006, had improved to the point where he could perform light exertional work with occasional stooping, kneeling, crouching, or crawling. (Tr. 21-24.) The ALJ found as follows:

8

> On December 19, 2005, Mr. Gray had the last sutures removed that had remained from a previous procedure (Exhibit 9F, p. 6). There is no evidence of further procedures and follow-up visits [which] show that Mr. Gray was doing well. On December 27, 2005, Mr. Gray was noted to have good healing of wounds where the sutures were taken out, non-tenderness of the abdomen, and no other abnormalities (Exhibit 9F, p. 29). On April 10, 2006, the examining physician noted no evidence of a recurrent hernia and observed that the abdominal incision had healed well (Exhibit 9F, p. 28). The examining physician cleared Mr. Gray to begin strengthening exercises and lifting simple weights.
>
> In sum, the evidence demonstrates medical improvement.

(Tr. 21.)

The ALJ's finding is supported by substantial evidence. A claimant previously determined to be disabled is not entitled to continuing benefits if his or her impairments dissipate to the extent that the individual is able to perform substantial gainful activity. *See, e.g., Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Further, "a prior disability determination does not create a presumption of continuing disability." *Sanders v. Comm'r of Soc. Sec.*, 2004 U.S. Dist. LEXIS 27039 (E.D. Mich. 2004) (*citing* 42 U.S.C. § 423(f)). Admittedly, the medical record after December 31, 2005 is sparse. If it is Gray's position that the lack of such evidence renders the Commissioner incapable of concluding that medical improvement occurred, he has cited no law to support such a proposition. If Gray's position were correct, a claimant could simply stop seeking medical treatment after his or her impairments reached their zenith, point to the dearth of medical records, and argue that a finding of medical improvement cannot, therefore, be supported by substantial evidence. This is especially problematic in a case like Gray's, where there is no evidence that the physical injuries he suffered were chronic or impervious to improvement.

Moreover, courts have held that a failure to seek treatment could be indicative of a

9

claimant's lack of credibility when it comes to allegations of disabling symptoms. *See Bratcher v. Astrue*, 2009 U.S. Dist. LEXIS 92239 at *27 (S.D. Ohio July 10, 2009) (Plaintiff's failure to seek mental health treatment, coupled with other evidence of record, was sufficient to establish medical improvement); *see also Dicus v. Sullivan*, 1991 U.S. Dist. LEXIS 2114 at *27 (E.D. Wash. Feb. 19, 1991) ("Unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, can be justification for discrediting pain testimony.") (*citing Fair v. Bowen*, 753 F.2d 597, 603 (9th Cir. 1989)); *Delph v. Astrue*, 538 F.3d 940, 947 (8th Cir. 2008) (upholding finding that medical improvement occurred where claimant sought virtually no treatment for his depression after date of improvement), *cert. denied*, 129 S. Ct. 1999 (2009); *Beshears v. Astrue*, 2010 U.S. Dist. LEXIS 22735 (E.D. Mo. 2010) (finding that the ALJ properly considered claimant's limited medical treatment when determining medical improvement had occurred).

Here, the dearth of medical treatment after December 31, 2005, coupled with the medical evidence cited by the ALJ, constitutes substantial evidence of medical improvement. Once a disability has been found, it is not presumed to continue. Since the burden is on the claimant to establish that he has a severe impairment, it is incumbent upon him to provide an adequate record upon which the ALJ can base an informed decision as to disability status. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). As such, Gray's first assignment of error is without merit.

*Hypothetical*

Gray also appears to argue that the ALJ erred by finding an RFC consistent with light work, and, in the process, ignoring the hypothetical questions posed by counsel to the VE. (Doc.

No. 16 at 6.)  Without any further argument, it is difficult to ascertain exactly what the alleged error is.  A hypothetical question must precisely and comprehensively set out every physical and mental impairment of the applicant that the ALJ accepts as true and significant.  *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  Where the hypothetical question is supported by the evidence in the record, it need not reflect unsubstantiated allegations by claimant.  *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).  An ALJ's hypothetical question is not erroneous where at least one doctor substantiates the information contained in the question.  *See Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987) (*per curiam*).  It seems that Gray is arguing that the hypothetical questions posed by his counsel are supported by substantial evidence, and, therefore, they should have been used to determine Gray's employability.  Such an argument is not cognizable as it evokes an incorrect standard of review.

An ALJ's decision will be affirmed if it is supported by substantial evidence.  It is immaterial if substantial evidence also supports a contrary position.  *See, e.g., Kirby v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 182, 183 (6th Cir. 2002) (Commissioner's decision must be upheld if substantial evidence supports it regardless of whether substantial evidence support's claimant's position); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (a court must uphold the decision of the Commissioner even when substantial evidence exists to support both the Commissioner and the claimant); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) (substantial evidence can exist to support and detract from the ALJ's decision); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion).  The substantial evidence standard "presupposes

11

that there is a zone of choice within which the [ALJ] can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." *Williamson v. Apfel*, 1998 U.S. App. LEXIS 30010 at *13 (6th Cir. 1998) *quoting Mullen*, 800 F.2d at 545.

Thus, a claimant does not establish a lack of substantial evidence by pointing to evidence of record that supports his position and contradicts the finding of the ALJ. Rather, Gray must demonstrate that there is not sufficient evidence in the record that would allow a reasoning mind to accept the ALJ's conclusion. Gray has failed to draw this Court's attention to any deficiency in the ALJ's reasoning. Moreover, Gray has failed to point to any evidence of record that would have compelled the ALJ to adopt a hypothetical as restrictive as the ones posed by his counsel. Without explanation, Gray cites the psychological evaluation performed by J. Joseph Konieczny, Ph.D. (Tr. 164-69.) However, Dr. Konieczny's summary and conclusions indicate that Gray had adequate ability to concentrate, to attend to tasks, and to understand and follow instructions. (Tr. 168.) He further found that Gray was mildly to moderately impaired in his ability to withstand stress and pressure, as well as mildly to moderately impaired in his ability to relate to others and to deal with the general public. *Id*. These restrictions, while not insignificant, fall short of the level of severity proposed in counsel's hypotheticals. By contrast, the Court's own review finds that the ALJ's RFC analysis is both thorough and supported by numerous citations to the record. As such, his RFC finding and concomitant hypothetical were not inaccurate, and Gray's second assignment of error is, therefore, without merit.

### VII. Decision

For the foregoing reasons, the Magistrate Judge finds the decision of the Commissioner

supported by substantial evidence.  Accordingly, the decision of the Commissioner should be

AFFIRMED and judgment entered in favor of the defendant.

                                              s/ Greg White
                                              U.S. Magistrate Judge

Date: March 31, 2010

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**